Le Baron and Colquitt, Appellants, *vs.* Thos. W. Fauntleroy, et al., Appellees.

CHARLES LE BARON AND WALTER T. COLQUITT, APPELLANTS, *vs.* THOS. W. FAUNTLEROY, *et al.*, APPELLEES.

A paper purporting to be the will of F. was admitted to probate by the County Court of Escambia, and L. appointed administrator with the will annexed. Under the provisions of the will, L. paid a legacy of $50,000 to the widow of testator. Afterwards the next of kin of F. applied by citation to the County Court for revocation of the probate of the will, and the application was refused, but upon appeal from the judgment of the County Court, the Superior Court revoked the probate and set aside the will. Held, that the payment by L. of the legacy did not constitute a *devastavit*, but on the contrary was a duty enjoined by the obligation of his official oath, and that the next of kin could not recover the amount of the legacy against the administrator.

In such case where the widow and legatee afterwards married and died, her surviving husband is not liable to the next of kin for the amount of the legacy upon suit instituted after death, and simply upon the allegation that the administrator in paying the legacy committed a devastavit.

An appeal from a final decree opens for consideration all prior or interlocutory orders or decrees connected with the merits of the final decree.

This case comes up by Appeal from Decree rendered *pro forma* in Chancery in Escambia county, upon bill filed by heirs of George L. Fauntleroy against Charles LeBaron his administrator, and Walter T. Colquitt who intermarried with the widow of George L. Fauntleroy.' The facts of the case and the pleadings appear in the following agreed state of facts and pleadings, and in the opinion of the Court:—

The following facts are admitted and agreed upon in this cause:

1st. On the fifth day of November, 1839, George L. Fauntleroy died in Escambia county.

2d. On the 27th day of December, 1839, application was made to the Judge of the County Court of said county, for probate of a supposed will of the said George L. Fauntleroy, deceased, which application was rejected and refused by the Court.

3d. On the 22d day of January, 1840, letters of administration were duly granted by said County Court to Charles Le Baron on the estate of said Fauntleroy.

4th. On the 7th day of April, 1840, application was again made

Le Baron and Colquitt, Appellants, vs. Thos. W. Fauntleroy, et al., Appellees.

by the widow of the said George L. Fauntleroy, deceased, to the Judge of the County Court of Escambia county, for probate of the said supposed will, and the same was then duly admitted to probate as the will of the said George, on the testimony of George Willis and Judith Fauntleroy, now Caldwell, and there being no executor appointed or named in said supposed will, the same was ordered to be annexed to the letters of administration of the said Le Baron.— The said will was written and executed by the said George L. Fauntleroy about two weeks before his death, and in the words and figures following, to wit:

" Pensacola, 22d Oct., 1839.—In the name of God, amen.   I, George L. Fauntleroy, of Pensacola, Florida, do hereby make this my true and only will.

" I give my wife fifty thousand dollars forever, to be paid in bonds, &c.  I also give her the Piano, the sets of silver, and the dessert set of China.

" To my slaves Davy, James, Maria Ann, and the children of James and Maria Ann, I give their freedom forever, to be liberated at the expiration of six months from my decease.   I give"

5th. On the 25th and 31st of May, 1840, said Le Baron, as administrator with the will annexed, assented to the foregoing legacy to the widow and paid over to her $50,000 in bonds and notes due the estate, and $302 78, this being the estimated value of the Piano, silver set and dessert set of China, as directed in said supposed will.

6th. On the 15th day of October, 1840, the said Aphia, having removed to the State of Georgia, intermarried with the defendant Walter T. Colquitt, and on the first day of December, 1840,.the said Aphia died.

7th. On the sixth day of October, 1841, the parties complainants herein applied by citation to the County Court of Escambia county for revocation of the probate of the said supposed will of the said George L. Fauntleroy, and a judgment and sentence was pronounced by said Court against the application.   Whereupon the applicants appealed to the Superior Court of the said county, and the judgment and sentence of the County Court was reversed, and a judgment was rendered in said Superior Court revoking and setting aside said probate of said supposed will.   Which judgment was afterwards affirmed by the Court of Appeals.

8th. Said Fauntleroy in his life time was guardian of one Ann

Le Baron and Colquitt, Appellants, vs. Thos. W. Fauntleroy, et al., Appellees:

Beatty, a minor, who had some slaves in Florida, and they were hired out by the said George, he receiving the hire and keeping a regular account thereof. On the first of January, 1841, there was due to the said Ann Beatty, $4,341 07, as the balance of said hire, and the same was duly paid over by the said Le Baron to the Guardian of said Ann Beatty, appointed after the death of Fauntle-roy.

9th. On the 19th day of August, 1840, said Le Baron, as administrator, purchased at Mobile a draft on New York, drawn by Hart, Anderson & Co., in favor of J. C. Jacobson or order, for $668 57 ; this sum being then due to said Jacobson, in Virginia, for the board-ing and tuition of the said Ann Beatty—no guardian of the said Ann having been yet appointed since the death of the said George L. Fauntleroy. Said draft was duly forwarded to the said Jacobson and by him presented for payment, but the same was not accepted, and was protested. Suit was brought and judgment was obtained against the drawers without delay, and the execution was returned *nulla bona.* Suit was then brought by said Le Baron, as adminis-trator, against Ann Beatty and Thomas Heard, (with whom she had since intermarried,) in the Superior Court of Escambia county, to compel them to account to the estate for the amount of said protes-ted draft ; and at the June term of the Circuit Court for said coun-ty in 1846, the defendants having appeared and answered, the said Circuit Court decreed against the bill and ordered it to be dismissed.

10th. The entire amount of assets which have come to the hands of the said Le Baron, as administrator, (counting the $50,000 paid the widow as so much money, and regarding the amount due Ann Beatty as a part of the estate,) is 80,365 37. The amount paid out by him to widow and distributees, (including the amount of the protested draft of Hart, Anderson & Co.,) and for debts and expen-ses, is $80,644 60, besides one thousand dollars paid R. C. Corbin.

11th. The following is a schedule of the persons entitled to claim under the will of the said George L. Fauntleroy, and of the pay-ments made to them respectively by the administrator :

Aphia B. Fauntleroy, widow, -            -            - $50,302 78
Edmund and Leonard Corbin, through their father and
   guardian, R. C. Corbin, -         -            -        4,500 00

                                                          _____
Amount carried forward,        -     -      -      -  $54,802 78

Le Baron and Colquitt, Appellants, *vs.* Thos. W. Fauntleroy, et al., Appellees.

| | |
|---|---:|
| Amount brought forward, - - - - | $54,802 78 |
| Fanny Wyatt, intermarried with G. L. Nicholson, - | 2,500 00 |
| Maria Curtis, through her guardian, C. G. Curtis, | 2,500 00 |
| Thomas W. Fauntleroy, - - - | 2,673 35 |
| Judith Fauntleroy, Mrs. Caldwell, - - | 3,676 59 |
| George Willis, guardian of his children, - - | 3,595 00 |

$69,747 72

WALKER ANDERSON,
*Solicitor for Complainants.*
BENJ'N D. WRIGHT,
*Solicitor for Defendants.*

1. The bill states certain facts as a ground for relief, which are set forth in the agreement as to facts entered upon the record, and prays for relief.

2. Charles Le Baron, one of the defendants, demurs generally to the bill, and specially in that he is bound to settle his accounts, as administrator, in the County Court of Escambia.

3. Walter T. Colquitt, defendant, pleads, and for plea saith, that the will of Fauntleroy was duly admitted to probate, in which a legacy of $50,000, in bonds, &c., was bequeathed to Aphia Fauntleroy, widow. That, in pursuance of the will and probate, the administrator, Le Baron, delivered to the said Aphia the said sum of money in bonds and notes.

4. Charles Le Baron pleads, and for plea saith, what Colquitt said in his plea, adding, thinks at the time of his payment to the widow, the probate of the will was in full force and unrepealed.

5. Charles Le Baron answers, that he has filed a correct statement and account of the assets of the estate of Fauntleroy, together with an account of payments and distribution of the same, so far as administered, and an account of the assets yet unadministered.

6. Decree of the Superior Court.

And now at this day a decree was made by the Court, and is in the following words and figures, to wit :

Fauntleroy and others,  ⎫
*vs.*  ⎪
Charles Le Baron, Administrator, ⎬ In Chancery, Nov. T'm, 184 3.
W. T. Colquitt and Henry Ah-  ⎪
rens.  ⎭

The exceptions taken to the report of the Clerk and Master in this case having been overruled, the cause was then submitted upon

bill, answer, plea, and demurrer.  It appears that some time in the
year 18—, George F. Fauntleroy departed this life, leaving a paper
writing purporting to be his last will and testament, which was ad-
mitted to probate in the County of Escambia.  That letters of ad-
ministration, with the said "*will*" annexed, were granted to Charles
Le Baron ; that by said supposed last will and testament, fifty
thousand dollars in good notes and bonds, &c., were bequeathed to
Aphia Fauntleroy, widow of the said George F. Fauntleroy, dec'd ;
that by authority of said " letters testamentary," said Le Baron
took possession of the estate of said Fauntleroy, and paid over to the
said Aphia (widow) the said legacy ; that said Aphia subsequently
intermarried with the said W. T. Colquitt, and shortly thereafter
died ; that subsequent to said probate payment of the said legacy,
and intermarriage of the said Aphia with the said Colquitt, pro-
ceedings were instituted to set aside and annul said probate, and re-
sulted in a final decree, declaring the said paper writing not to be
the last will and testament of the said George F. Fauntleroy.——
It also appears that the legacy aforesaid was paid, before proceed-
ings were instituted to set aside the *will*, and while the probate
aforesaid was unrevoked, and before any notice had been given
of an intention to revoke the same.

It is therefore ordered, adjudged and decreed, that the plea filed
in this cause by the said Colquitt be sustained, and the bill dis-
missed as to him ; for should the legacy, thus paid to the said
Aphia, before her intermarriage with him, be excessive of her
distributive share as widow under the laws of Florida, then the
right of the other " distributees" (if they had any) to sue for
this excess should have been exercised before the death of the
said Aphia—for by her death her coverture with him was dis-
solved, and he was no longer responsible for any liabilities existing
against his said wife anterior to her marriage with him, and which
might have been enforced jointly against them during the cover-
ture.  It is further declared to be the opinion of this Court, that the
said Le Baron did not commit a *devastavit* in paying over the said
legacy to the said Aphia, before a revocation of the probate, or notice
thereof, and before suit brought to invalidate and set aside the said
*will*.  It is further ordered that the demurrer filed in this case by
the said Le Baron be overruled, and he is hereby ordered and decreed
to distribute amongst the complainants, their respective proportions
of the assets remaining in his hands after paying the aforesaid leg-

Le Baron and Colquitt, Appellants, vs. Thos. W. Fauntleroy, et al., Appellees.

acy, and deducting the costs, charges and commissions incurred, in administering said estate. It is further ordered, adjudged, and decreed that this suit be dismissed, so far as it seeks to make Henry Ahrens the security of said Le Baron on his administration bond, a party defendant, for in case of a default, or devastavit by said Le Baron, the remedy against said surety, would be in an action at law upon the administration bond.

DILLON JORDAN, Judge.

7. From this decree an appeal was taken by defendants, and the Court of Appeals decreed as follows:

George Fauntleroy and others,   Appellants.
   and
Charles Le Baron, Walter T.   Appellees and
  Colquitt and Henry Ahrens.   Defendants.

Upon an appeal to a decree of the Superior Court for the Western District for the county of Escambia.

This cause coming on to be heard on an appeal from the decree of the Superior Court of the Western District sitting as a Court of Chancery in and for Escambia county, and after hearing the arguments of Mr. Anderson and Mr. Brockenbrough, of counsel for complainants, no counsel appearing on behalf of defendants, and after inspection and examination of the record in said cause, and due deliberation being thereon had, it is ordered, adjudged and decreed, and this Court by virtue of the power and authority in it vested, doth hereby order, adjudge and decree that the decision and decree of the said Superior Court of the Western District, made and entered in this cause, at the November term of said Court, in the year 1843, be and the same is hereby in all things reversed, annulled and set aside, except as to so much of said decision or decree of November term 1843, as directs or decrees that the bill of complaint shall be dismissed as to the said Henry Ahrens, and the said decree, so far as the same declares that the said Ahrens is not properly a party to this suit, and ought not to be included in the bill of complaint, is hereby affirmed. And it is hereby ordered and decreed that the said bill be dismissed as to the said Ahrens, without prejudice however to the future rights of the complainants. And it is further ordered, adjudged and decreed, that so much of the previous or interlocutory decree in this cause, (made before the final decree of November, 1843, aforesaid,) by the said Superior Court as adjudged, ordered or decreed the complainants' bill of complaint to be dis-

36

missed as to the said Colquitt, and so much of said interlocutory decree as orders and directs the said bill to be dismissed so far as it charges the said Le Baron with a devastavit be and the same is hereby reversed, annulled and set aside, and that the remainder of said interlocutory decree be affirmed. And it is further ordered, adjudged and decreed that this cause be remanded to the Superior Court of the Western District, with directions to that Court to over-rule the pleas and demurrers of the defendants, Colquitt and Le Baron, and to cause them to answer fully and distinctly the complainants bill, and to proceed in said cause according to law and equity, and as to right and justice may appertain. And it is further ordered and decreed that the said defendants, Le Baron and Colquitt, pay the costs of said appeal in this Court to be taxed.

8. Walter T. Colquitt answers, setting forth facts already stated and also alleging that certain of the bonds and notes paid to Mrs. Fauntleroy by Le Baron had been lost to respondent, who had incurred certain expenses in endeavoring to collect them; the facts relating hereto will appear by affidavits, to be taken by agreement.

9. The amended answer of Charles Le Baron recites facts already upon the record, and replies to his accounts, which are filed.

10. Decree of the Circuit Court:

Thomas Fauntleroy, et al., Complainant, } In Chancery, Circuit
        vs.                             } Court, Western Dis-
Charles Le Baron & W. T. Colquitt.      } trict, Escambia county.

This day came the complainants by their counsel, and the defendants by their counsel, and thereupon this cause was submitted for hearing upon bill, answer and exhibits, and the Court having advised and considered the same and the decree of the Court of Appeals of the late territory of Florida, doth order and decree as follows:

That defendants, Charles Le Baron and Walter T. Colquitt, are properly chargeable in account with complainants, as heirs and distributees of George L. Fauntleroy, deceased, with the bonds and securities in the proceedings mentioned and referred to at the value thereof, delivered by the said Le Baron under the pretended will of the said George L. Fauntleroy to said Walter T. Colquitt, in payment of a legacy to Aphia, wife of said Colquitt, and formerly widow of said Fauntleroy, mentioned in said pretended will.

That said defendants, Colquitt and Le Baron, in accounting for

said securities or their value, and the interest thereon since the date of their respective receipts, are entitled to be credited with the interest in value of said Aphia as widow, and her representatives, in the estate of the said George L. Fauntleroy, that is to say, one half of the clear actual value of the personal estate, (except slaves,) of the said Fauntleroy, with the value of the use of one-half in value of the slaves after the death of the said George L. Fauntleroy up to the death of the said Aphia, and to the value of the use of one-third in value of the lands of said George L. Fauntleroy, deceased, during the same interval: the value of which said uses for life of said portions of the slaves and lands is to be estimated by taking one-half of hires and profits of the slaves, realized or secured during that period by the said Charles Le Baron as administrator, or said complainants; and one third of the issues and profits realized and secured from the land during the same period by said Le Baron, as administrator, or said complainants. Provided, that all payments, (exclusive of the delivery of said bonds and securities to said Colquitt under the said pretended will,) made to said Aphia or said Colquitt, on account of said claim for dower, be deducted as of the dates they may have been respectively made. And provided further, that in estimating the value of the estate of the said Fauntleroy, the estate of Ann Beatty, held by him as guardian of the said Ann Beatty, be not regarded as assets in the hands of the administrator, but that the same be deducted from the fund out of which dower is to be paid to the said Aphia and her representatives.

And it is further ordered and decreed, that it be referred to Owen M. Avery, one of the Masters of this Court, to take account of and ascertain upon such proofs as shall be adduced by the parties, after notice to them or their counsel for that purpose, what amount of bonds and securities delivered as aforesaid, under said pretended will, to said Walter T. Colquitt, remains in specie in the hands of said Colquitt, and the value of the remainder which may have been collected or disposed of: and also what is the value of the dower of said Aphia in said estate, estimated upon the principles above laid down—and that the said Master make report to this Court, with all convenient speed, upon the matter herein decreed and referred, with such other matter specially stated, as he may deem pertinent, or either of the parties may require to be so stated.

GEORGE W. MACRAE,

Judge of South. Cir. Florida, presiding in West. Circuit.

11. In obedience to the foregoing decree, the Master presented his report as follows:

And now at this day, to wit: on the 13th day of October, A. D. 1847, O. M. Avery, as Master in Chancery, and in pursuance of the above Decree, filed his report herein, which is in the words and figures, to wit:

To the Hon. Thomas Baltzell, Judge and Sitting in Chancery for the County of Escambia:

The undersigned to whom was referred by an order of this Honorable Court, to take account of and ascertain the amount and value of certain bonds and securities delivered by Charles Le Baron, administrator of George Fauntleroy, deceased, to Walter T. Colquitt, either remaining in the hands of said Colquitt or collected and disposed of by him; and also to ascertain the value of the dower of Aphia, the widow of said Fauntleroy, and since the wife of said Colquitt, estimated upon the principles set forth in a decree of this Court at the fall term thereof held in 1846, and to make report thereon with such other matters as he may deem pertinent to the controversy before the Court, respectfully reports:

That his first care has been to ascertain the clear value of the estate of the said George Fauntleroy, coming into the hands of the administrator, which is subject to the dower of said Aphia, late wife of the said Colquitt. 1st. The whole amount of the personal estate reduced to the possession of the administrator, as set forth in his account on file, is 80,385 37. From this amount the undersigned by the direction of the Court deducts the amount of the estate of Ann Beatty; which having been found in the hands of the deceased as the guardian of the said Ann, was paid over to her by the administrator, to wit: $4,495. He also deducts as directed the amount received on the sale for the hire of negroes and for house rent. This amount according to the statement of the administrator is $3,276. He finds also amongst the assets reported as received a draft afterwards lost, amounting with charges to $752 13—which he deducts as forming no part of the estate realized. The expenses also of administration allowed by the Court of Probate, including the commissions of the administrator are also deducted, amounting to $6,169 95. The aggregate of these several items is $14,693 08—which being deducted from the whole amount received by the administrator, to wit: $80,385 37, leaves as the fund subject to the dower of the widow $65,692 29. The half of this amount is

$32,846 14—to which is to be added according to the terms of the decree of this Court, the value of the use of one-half of the slaves and one-third of the lands from the death of Geo. Fauntleroy to the death of his widow Aphia. The real estate appears to have rented at $50 per month, and the slaves to have hired at $22 50 a month.— So that the sum of $27 90 a month is to be added to the dower during the life-time of Aphia Fauntleroy, and she having survived her husband 13 months, the gross amount would be $362 70, making the whole dower $33,208 84.

The undersigned reports therefore that this amount, to wit : $33,-208 84, was properly paid by the administrator to Aphia Fauntleroy on the 25th day of May, 1840. And it appearing that on that day, the sum of 50,302 78 was paid to Aphia Fauntleroy, it follows that the sum of $17,093 94 was over paid, and that the administrator and the said Walter T. Colquitt are responsible to the complainants for that sum, together with 8 per cent. interest on the same—which amounting on the 25th Oct., 1847, to $10,142 37, makes the whole amount $27,236 31.

2d. This amount of 27,236 31, due to the complainants, must be divided amongst them in unequal proportions, inasmuch as it appears from the account of the administrator that unequal payments have been made to them.

By a calculation which it is not necessary to spread at large upon this report, the undersigned finds that in order to equalize the shares of the respective claimants the aforesaid sum should be divided as follows, to wit :

| | | |
|---|---|---|
| 1. To B. C. Corbin, guardian, &c., | $2,168 | 75 |
| 2. To G. L. Nicholson, husband, &c., | 4,168 | 75 |
| 3. To C. G. Curtis, guardian, &c., | 4,168 | 75 |
| 4. To J. P. Fauntleroy, | 3,995 | 40 |
| 5. To Dr. Byrd, guardian, &c., | 6,668 | 75 |
| 6. To A. C. Caldwell, husband, &c., | 2,992 | 16 |
| 7. To G. Willis, guardian, &c., | 3,073 | 75 |
| | $27,236 | 31 |

The undersigned further reports that no testimony has been presented to him as to any losses sustained by the said W. T. Colquitt, on the amount paid over to the widow of George Fauntleroy, except that it is alleged in the answer of said Colquitt, that the amount of loss was about $8,000. He is informed by the respective Solicit-

Le Baron and Colquitt, Appellants, vs. Thos. W. Fauntleroy, et al., Appellees.

ors of the parties, that further testimony upon this point will be taken at some future period, and he will therefore only observe that according to the principles upon which this report is based, whatever loss sustained by said Colquitt, may by the Court be adjudged to fall on the estate of the said Fauntleroy, should be deducted from amount with which he would otherwise be charged.

In conclusion, the undersigned reports, that a large amount of the estate, to wit : More than $14,000 is yet unadministered. The greater portion of this being represented as bad debts, and a part being in process of recovery by law, he submits to the Court, that it be left to future adjustment, upon the same principles set forth in this report.

O. M. AVERY,

*Master in Chancery.*

12. Defendants file exceptions in the following words :

And now at this day, to wit : on the 14th day of October, A. D., 1847, came the defendants by their solicitor, and filed their exceptions to the Masters report, which are in the words and figures following, to wit :

Thomas Fauntleroy, and others,
          *vs.*                } In Chancery.
Charles Le Baron and Walter T. Colquitt.

Exceptions taken to the report of Owen M. Avery, Esq., Master in Chancery, made in pursuance of a decree in this cause, dated the 24th day of October, 1846.

1st exception. For that the said Master has in his report excluded the commissions and expenses of settling the estate of the said George L. Fauntleroy, deceased, from among the charges made by the administrator against the distributees, thereby making the same a charge upon the widow's dower ; whereas the widow's dower should be estimated and set off without reference to such commissions and expenses, being in this case the entire half of the personal estate, the use for life of one-half of the slaves, and the use for life of one-third of the real estate.

2d exception. For that the said Master in his said report charged these defendants with interest from the 25th day of May, 1840, to the 25th day of October, 1847, on the amount by him declared to have been paid to the widow, over and above what she was entitled to as her dower, when no such interest can be legally or equitably charged.

Le Baron and Colquitt, Appellants, vs. Thos. W. Fauntlcroy, et al., Appellees.

Whereupon the said defendants except to the said Masters report, and appeal therefrom to the judgment of this honorable Court.

BENJ. D. WRIGHT,
Solicitor for Defendants.

13. Final decree of the Circuit Court.

Fauntleroy and others,
vs. } In Chancery.
Le Baron and Colquitt.

This cause coming on to be heard upon the report of the Master, made in obedience to a decree of this Court, and upon the exceptions thereto, and the counsel of complainants and respondents being heard, and it being agreed by the parties through their respective solicitors, that a decree *pro forma* shall be pronounced herein, without prejudice to the competency of the Judge by whom the decree is pronounced, to sit in the cause in the Supreme Court, in case there be an appeal : It is, therefore, in furtherance of said agreement, considered by the Court, that the said Le Baron committed a *devastavit* in paying over to the said Aphia more than she was entitled to as dower in the estate of her deceased husband ; and it is therefore ordered and decreed that the exceptions to the said report be overruled, and that the defendants pay to the said complainant, R. C. Corbin, as guardian of his infant children, the sum of $2,168 75 ; to the complainant, G. L. Nicholson, the sum of $4,168 75 ; to the complainant, G. P. Curtis, as guardian of his infant children, 4,168 75 ; to the complainant, Thomas L. Fauntleroy, the sum of $3,995 40 ; to the complainant, Dr, ——— Byrd, as guardian of the infant children of Lawson Fauntleroy, the sum of $6,668 75 ; to the complainant, Robert C. Caldwell, in right of his wife, Judith Fauntleroy, the sum of $2,992 16 ; and to the complainant, George Willis, as guardian of his infant children, the sum of $3,073 75—these several sums being the amount with interest which was wrongfully paid to Aphia Fauntleroy on the 25th May, 1840, over and above her dower, and that the defendants pay the costs of this suit. And it is further ordered that the said defendant, Charles Le Baron, proceed to administer the residue of the estate in his hands reported by him to be unadministered, and that as he reduces the same to possession, (after deducting the charges of administration,) he shall pay to the said Walter T. Colquitt the one-half thereof, and to the complainants the other half, in the proportions respectively due to each ; and that the said Le Baron make

Le Baron and Colquitt, Appellants, *vs.* Thos. W. Fauntleroy, et al., Appellees.

report thereof, as early as practicable, to the Court of Probate for Escambia County.

It is further ordered and decreed that the parties have leave to take further testimony, to be used in the Supreme Court.

THOMAS BALTZELL, *Judge.*

*Wright,* for Appellant.

*Anderson,* for Appellees:

1. The decree of the Court of Appeals reversing the decree of the Superior Court is conclusive against Colquitt as to his right to retain the legacy paid him.

2. It is also conclusive against Le Baron, the administrator, as to having committed a *devastavit* in paying over the legacy to Colquitt.

3. Supposing it not to be conclusive, they are both responsible to the distributees for the supposed legacy, because the right to the legacy was derived solely from the supposed will, which being a nullity, the legacy was paid in wrong of the distributees.

4. The probate of a will is only operative as *evidence,* and gives no vitality to the instrument itself. 1 Williams on Executors, 159, Ib., 339. Thompson's Dig., 199.

5. The executor derives his title solely from the will, and not from the probate. Ibid. Toller on Ex., 75. 1 Dane's Abridgement, 558. The authority of an administrator to execute a will rests, of course, on the same foundation.

6. The acts referred to by the appellants' counsel, such as the paying and receiving of debts by an executor or administrator, acting under a grant subsequently revoked, differ from the payment of the legacy in question in this: that the former relate to rights pre-existing before the grant, while the latter, resting upon a void will, derives its sole authority from the probate.

7. The allowance of all the acts referred to by appellants' counsel under the revoked grant, secures the rights of all parties while the allowance of the legacy in question would irreparably destroy the undisputed rights of the complainants. 1 Will. on Ex., 373. "The rightful representative may either sue the buyer from the wrongful representative in detinue or trover, or he may waive the tort and sue for the money." 1 Williams, 368.

8. The probate of a will is an *ex parte* proceeding, and therefore not binding as a judgment. Thomp. Dig., 193.

9. Le Baron was not *compellable* to pay the pretended legacy at the time he did. Thompson's Dig., 205. See statement of facts.

10. The refunding bond required by our statute, (Thomp. Dig., 206,) strengthens all the previous views on this subject, and provides for the very contingency which has happened, and secures, as it was intended to do, the rights of all the parties.

This bond is unnecessary, if defendants' counsel are correct. 2 Call's Rep., 95.

11. The probate of Fauntleroy's will was *void*, and not voidable as is contended, and consequently the acts under it are *void*. Toller on Ex., 78. 1 Williams on Ex., 367, 368, 369, 370, 371, and note (1.) Exception to the general rule : 3 T. R., 125, Allen *vs.* Dundas.

The apparent contradiction of Toller and Williams is reconciled by noting that the distinction between *void* and *voidable* grants applies to administrations, and rarely (if ever in this country) to probates. The latter when revoked are necessarily void, *ab initio.* 1 Toller, 78, 119, 128, 129, 131. 1 Will., 369, and note (o,) 370.

The distinction between repeal upon appeal and citation, applies to grants of administration, and not to probates, the latter being an *ex parte* proceeding.

Voidable administrations what ? 1 Williams, 361. Comstock's Dig., 262. 1 Williams, 371, and note (1.)

12. The ordinary is incapable of divesting the interests of the distributees in this case which vested upon Fauntleroy's death.

13. The act of the administrator being void the complainants should recover from Le Baron and Colquitt, the whole amount paid Mrs. Fauntleroy, because no dower having been assigned to her during her life none can be assigned now, the only mode known to the law being now impossible. Thomp. Dig., 186.

14. If the Court should think the widow entitled to retain the difference between the legacy and her distributive share as widow, then the principles upon which the account should be made are correctly set forth in the decree below, and master's report.

*Brockenbrough,* for Appellees.

*Colquitt*, for Appellant :

*First*. The decree of the Court of Appeals of the Territory settles no principle of law in the case.

*Second*. If the decree of the Court of Appeals had decided upon what principles the cause must be settled ; still, if in carrying out that decree by the Court below, any cause of grievance should justify an appeal, upon such appeal the Appellate Court will examine the merits of the whole cause. 1 Hill's Ch., 450, and authorities there cited.

*Third*. If the agreement of facts in the fourth statement be, as counsel for complainant insist, conclusive, that the administrator was not qualified according to law as administrator *cum testamento annexo*, after probate of the will, then we insist that he is not administrator at all, and that he is not charged in complainants' bill for any default for which he can be charged as administrator, as the matters of complaint all transpired after his letters of administration were annulled by probate of the will. Williams on Ex., 367.

*Fourth*. The Court of Probate for the Territory of Florida had exclusive jurisdiction of probate of wills, subject only to the Chancery supervision, as in England, and therefore the Superior Court of the Territory had no jurisdiction of an *appeal* from the Probate Court, and their decree upon such appeal was a nullity. Thomp. Dig., 194–5. Ib., 365. Ib., 57–8.

*Fifth*. The widow has a distributive share of the personal property in preference to all claims, and consequently before the deduction of funeral expenses, &c. That distributive share must necessarily be on the gross amount, and not on the nett sum after deducting expenses of administering the estate. Dower is of the real estate and slaves. Thomp. Dig., 184–5, and notes.

The amount due Ann Beatty was a debt of the estate. 11 Pick., 173. By the statute of the Territory no interest can be allowed but on cash balances, and then only in certain cases. Thompson's Dig., 207–8. Williams on Ex., 1131. 12 Vesey, 386.

While the draft with charges amounting to 752 13, may be a charge on the estate with which the administrator should be credited, it was certainly a *debt* on the estate, and of consequence had to be postponed to the widow's distribution. The widow should have been allowed the full rent of the houses, offices, &c., 12 months provisions, and the hire of half the servants.

*Sixth.* The complainants' bill makes no allegation by which the defendant Colquitt can be made liable. Story's Eq. Pl., 27. Gresley on Ev., 23.

The bill charges, in its charging part, that the administrator paid Colquitt $50,000. This charge is denied by the answer, and is not sustained by proof. The bill further charges, in the charging part of the bill, that a portion of this amount was paid in bonds and notes to the said Colquitt. This charge is denied in the answer, and the complainants offer no proof to sustain it. The answer denies ever having received any of the assets of Fauntleroy's estate, except the same may have been received by his marriage with the widow.— The answer admits that Mrs. Fauntleroy may have received bonds, notes, &c., and if she did so she received them properly, under the will of her deceased husband, and would not have been responsible.

*Seventh.* If the widow were responsible at all to refund as distributee, she could not have been joined, if alive and a *femme sole*, with the administrator in an action for *devastavit* against him.

*Eighth.* If the widow could so have been joined, and was legally responsible, as assisting to commit a *devastavit*, Colquitt after her death was not liable. And any suit brought for a *devastavit* committed by the wife against him would be dismissed with costs. Will. on Ex., 1128. 2 Kent's Comm.

*Ninth.* Personal assets cannot be followed when disposed of by an executor or administrator unless for fraud. Will. on Ex., 609. 4 Term, 625. Note to Farr *vs.* Newman, 1 Atkinson, 463.

*Tenth.* When executor consents to legacy the legatee's title is complete. Williams on Ex., 843, and references.

*Eleventh.* At what time legacies are to be paid. Time allowed the administrator is for his convenience. Will. on Executors, 853-4.

*Twelfth.* The complainants' bill in stating its equities against the administrator is a simple bill to account. Story's Eq. Pl., 27.

*Thirteenth.* What is a *devastavit*, and what the duties of an executor or administrator with will annexed. Williams on Ex., 1104.

*Fourteenth.* When the administrator paid in bonds and notes to widow, it was in conformity to directions of a valid will accompanying his letters, which he could not refuse to obey. It was not a supposed will—not a pretended will—but an actual will—a valid will, and so declared by a Court of competent jurisdiction which

Le Baron and Colquitt, Appellants, vs. Thos. W. Fauntleroy, et al., Appellees.

was binding on the administrator, and all the world. The refunding bond to the administrator could not make an act of the administrator which was legal and right when he performed it, wrongful and tortious.

*Fifteenth.* The after setting aside of the probate of that will upon citation does not make void the acts of the administrator. Williams on Ex., 367–8. Ib., 371, and note 1. Ib., 339. 3 Bac. Abr., 51, 61, and notes. 1 Danes' Abr., 581, 564. 1 Bailey Rep., 221.

*Sixteenth.* An executor or administrator stands in the most favored condition of all Trustees. Will. on Ex., 1021. 14 Ed. Comyn's Dig., Assetts D. 2 Vesey, Sr., 240.

*Seventeenth.* The complainants had been virtually receiving under the will. The widow, of course, yielded her legal rights given by statute in case of intestacy, and those rights were at once distributed among the complainants. It is against the principles of equity, that a party shall derive a benefit from an instrument, and then seek rights adverse to it. Story's Eq., 345, Sec. 1082.

" You cannot come forth to a Court of justice claiming in repugnant rights," are the words of Lord Roselyn. 2 Vesey, Jr., 696. The same opinion expressed by Lord Mansfield, 4 Term Rep., 743, n.

In case of Lord Little *vs.* Baily, Cowper, 597, it is said, " that no Court will enforce rights which it recognizes as repugnant, may be admitted as a universal proposition.

*Eighteenth.* The complainant who swore to this bill, and on whose testimony the will was established, and who is acting for others, consented to the judgment of the legacy under the will, acquiesced in such payment for near 18 months before moving by citation—the other claimants, with full knowledge, acquiescing and receiving distribution, adds to the injustice of seeking to hold the administrator liable, and is contrary to every principle of equity.

BALTZELL, J., delivered the following opinion :

On the seventh day of April 1840 probate was made by the County Court of Escambia of an instrument of writing purporting to be the last will and testament of George L. Fauntleroy by which he bequeathed to his widow the sum of fifty thousand dollars, a piano, some plate and a set of china, and the will was ordered to be annexed to the letters of administration previously granted to Le Baron there being no executor named in the will.

On the 25th and 31st of May, of the same year, Le Baron acting in obedience to this will and under the probate of the Court paid to Mrs. Fauntleroy $50,000 in notes and bonds, and a sum equal to the piano and the other articles.

In October 1841, the next of kin the present complainants applied to the County Court for a revocation of the probate, which was refused. They appealed to the Superior Court who revoked and set it aside declaring the will invalid. An appeal was taken to the Court of Appeals who affirmed the judgment of the Superior Court in 1845.

This suit is instituted against the administrator and against Colquitt who intermarried with Mrs. Fauntleroy, complaining of this payment as a devastavit and insisting not only upon the disallowance of the sum paid to the widow, but of the forfeiture of all interest by her in the estate of her husband.

In support of this position complainants rely upon the difference assumed in the books between acts of an administrator or executor regarded as voidable and those that are void, contending that the action of Le Baron in the payment to Mrs. Fauntleroy was void.

" Whether the acts of an administrator or executor whose probate or letters are revoked, are valid or not, depends it is said upon the character of the grant. The distinction is between grants that are void and such as are voidable. If the grant be of the former description the mesne acts of the executor or administrator done between the grant and its revocation shall be of no validity." 1 Will. on Executors, 400. Toller, 120–8.

" But if the administration be voidable only, all lawful acts of the first administrator shall be valid." 1 Will., 402. Toller, 129.

" It may be laid down as a general rule that where the grant *is in derogation of the right of the executor* it is void, but where the administration is granted by the proper jurisdiction and is only in derogation of the next of kin or residuary legatee it is merely voidable." 3 Bacon Ab., 50. 1 Will., 403–4.

Toller says " in all such instances the administration is a mere nullity. The executors *interest*, the ordinary is incapable of divesting." Toller 120.

It seems according to this that if the grant be in derogation of the interest of the next of kin this does not make the action of the administrator void. Let us enquire as to the interest of the executor which is attended with such important consequences.

1st.. He had a right to retain for a debt due to him in prefer-ence to all other creditors in an equal degree.    Toller, 295.

2d.  If indebted to his testator his appointment and acceptance of the office shall operate as a release and extinguishment of the debt. Toller, 347.

3d.  After payment of funeral expenses, testamentary charges, debts, and legacies, if there be a surplus it shall vest in him bene-ficially.   2 Will., 898.    Toller, 351.

This was the law in former times but by our statute this extin-guishment is expressly done away, so is the right of retainer by the same act providing for a pro rata settlement of all demands which may be rendered in according to law, whilst there is no instance of a claim to the surplus with us.    Duval, 188.    Thus clearly placing an executor on the same footing of an administrator, making him alike with the administrator an agent or officer merely for the set-tlement of the estate with no further interest than that of commis-sions and fees.

It will be thus perceived why a grant in derogation of the right of the executor was so highly esteemed in the early decisions, yet when the cases supporting this doctrine, to wit, Parten and Barsdens, case 1 Mod., 213—Dr. Henslow's case, 9 Co., 37, B—Abram vs. Cunningham, 2 Lev., 182—Wankford vs. Wankford, Salk., 307— Graysbrook vs. Fox, Plow., 275, were cited before Lord Redesdale in Doyle vs. Blake, he said that "some of these old cases could scarcely be supported on principle, they were decided whilst a great jealousy of the Ecclesiastical Court prevailed. That the meaning of the modern determinations was that an administration granted after an executor having acted in pais might be repealed by an applica-tion to the Ecclesiastical Court, not that it was a mere nullity unless as a protection to the executor.   That it was true an executor hav-ing acted could not discharge himself from liability by such an ad-ministration being granted to another, but that a debtor to the fund could not in answer to a suit by such administrator set up the act in ·pais of the executor against his renunciation, in order to delay or prevent a recovery by the administrator.   That the administration was void only as a protection to the executor, but in no other sense." The case before the Court was an illustration of these remarks.— Blake and Atley were appointed executors and after performing some acts which the chancellor considered as amounting to an ac-tion by them in that character renounced in favor of a third party

to whom administration of the will was committed, he becoming insolvent, they were held liable for his administration as if he had been their agent.    2 Sch. and Lef., 246.

Williams on Executors adopts these remarks, and adds, " so if the executor has acted, and the ordinary not knowing it, commits administration to another, though the administration may be revoked, and the executor compelled to prove the will, yet the grant of administration, with the will annexed, until so revoked is valid."    1 Williams on Executors, 162, and notes.

This view is sustained by the case of Allen *vs.* Dundas, which was to recover from a debtor a debt which he had paid to an executor, under probate of a forged will afterwards revoked.    The position taken was as in this case, that the probate was only evidence of right ; that the executor derives his authority from the will, and not from the probate, and that there was no payment.    The Court, however, said : " Here the defendant acted under the authority of a Court of law.    Every person is bound to pay deference to a judicial act of a Court having competent jurisdiction.    Here the spiritual Court had jurisdiction over the subject-matter, and every person was bound to give credit to the probate till it was revoked."    Buller, Justice, said, " I am most clearly of opinion that it is a judicial act, and that the probate is conclusive till it be repealed, and no Court of common law can admit evidence to impeach it."    3 T. R., 129.

So also in the case of Digby & Hollis *vs.* Wray, B. R., 25 & 26, Car. 2, the plaintiff as executor had judgment against the defendant, and then there was a suit in the spiritual court to repeal the letters, and the defendant prayed a stay of execution till the matter was tried in the spiritual Court—the Court denied it, for the reason that if a debtor pay money on a judgment and execution to one who is executor *de facto*, having a probate under seal of a prerogative Court, he shall never be forced to pay it again.    3 Bac. Ab., 51.

To the same effect are decisions of the Supreme Court of South Carolina.    In Benson, administrator, *vs.* Price & Byers, the Court say, when an administration which has been granted is properly revoked, the latter administrator may sue the former for money had and received, or in trover for any goods remaining in his possession, by him converted, or not duly administered.    Any other doctrine would be fraught with the most monstrous inconvenience.    2 N & McC., 577.

In Foster vs. Brown, administration had been obtained by a fraudulent suppression of the will, in which the executor as well as the administrator concurred—it was held that all acts done in a due and legal course of administration are valid and binding on all interested, although it be afterwards revoked, nor can the manner of obtaining the administration, whether fairly or fraudulently, vary the question. 1 Bailey, 221.

In Price vs. Nesbit, allusion was made to these authorities, and their application to the case, which was that of a will set up after grant of previous administration enforced. 1 Hill, 461.

So also in Pennsylvania, an opinion was once entertained that payments made to one who had obtained probate of a will which was afterwards repealed were void, and in support of it, 1 Roll. Abr. & Con. Rep., 152, were cited, but those cases have been overruled. The granting probate is a judicial act, and while it remains in force cannot be contradicted. Appeal of Peebles, 15 Sergeant and Rawle, 39.

But there is another consideration showing the entire inapplicability of the rule to the present case, even conceding it to be in operation, when *derogatory to the rights* of an executor. There was no executor by this will possessed of rights to be affected by the action of Le Baron. He was himself filling the office of executor, having been appointed administrator, with the will annexed, and continued administrator after revocation of the probate.

It is contended that the acts of paying and receiving debts by an executor or administrator, acting under a grant subsequently revoked, differ from the payment of a legacy in this, that the former relate to rights pre-existing before the grant—whilst the latter, resting upon a void will, derives its sole authority from the probate. The propriety of the distinction is not perceived. Indeed, to allow it would be to assert that the probate is a judicial act, available to a legatee or creditor of the estate against the officer, but impotent for his protection. This would be to declare a part of his duty as obligatory, and hold him discharged from the remainder. We cannot, however, draw such a distinction. All the duties of the executor or administrator, resulting from the probate of the will, or from the letters of administration, with the will annexed are alike imperative and obligatory. " An executor is he to whom another man commits, by will, the execution of that, his last will and testament, and the duty of an administrator with the will annexed, is very little different from

that of an executor." 2 Black., 503. "The executor is bound to perform a will." Ib., 507.

"All administrators, with the will annexed, shall make oath or affirmation before the Court or Judge that they will *well and truly perform the last will and testament of the testator,* and pay his just and lawful debts, &c." Duval's Com. 170.

"A probate is conclusive both in Courts of law and equity, as to the appointment of the executor, and the validity and contents of a will so far as it extends to personal property." 1 Williams, 368. Toller, 76.

"The probate is conclusive as to every part of the will in respect of which it has been granted." Ibid, 369. 4 Rand., 538. 2 Ibid, 194.

The will being established by competent judicial action, and this administrator having sworn to perform it, what was his course?— Obviously to pay debts first, if there are none, then to pay legacies, and distribute the residuum. If the assets were in bonds and notes, they should have been collected as early as possible, and paid over; but, if the legatee preferred taking the burthen of collection, we see no objection, but on the contrary very great propriety in the executor permitting it.

It was clearly a matter of duty on the part of this administrator to pay legacies under the will as much as to receive debts, and if there be a discharge in the one case, we are at a loss why it should not operate in the other. In the case under consideration there was an express mandate of the Court to pay this legacy—an adjudication upon the very point; the very object of the probate, its almost entire object was to procure its payment, and the officer was bound as well by his office as by the solemn obligation of his oath to pay it. To refuse payment would have been alike inconsistent with both of these. To enforce a performance of duty by such injunction, and then subject the officer to peril of his fortune, if through a diverse action of the parties interested, or a change of opinion as to the law by the Courts whose agent he was, would be in our opinion the height of injustice. In the case of the debtor protected as we have seen by the probate, as a judicial act there was no mandate, but mere obligation to pay. If the comparative loss is to be regarded, distributees may be as much affected by improper and illegal receipts, and payments by an executor or administrator, as by the improper payment of a legacy. The remarks of the Court in Allen *vs.* Dun-

38

das, are so appropriate as to deserve a more special reference on this branch of the subject. Ashurst, J., said "I am of opinion that the plaintiff has no right to call on the defendant to pay this money a second time, which was paid to a person who *had at that time a legal authority to receive it.* It is admitted that if he had made this payment under the coercion of a suit in a Court of law, he would have been protected against any other demand for it, but I think that makes no difference. For as the party to whom the payment was made had such authority as could not be questioned at the time, and such as a Court of law would have been bound to enforce, the defendant was not obliged to wait for a suit, when he knew that no defence could be made to it." 3 T. R., 129.

If there were yet doubts, we think there is express authority in support of the view we have taken. In Hele *vs.* Stowel, the husband devised his lands to his wife during the minority of his son, with power to make leases to pay debts, &c., and dies &c., the wife enters and takes the profits, and then marries a second husband, and he lives some years and takes the profits and dies, and the wife continues to take the profits, &c. The son *attains his age,* and proves a revocation of the will, and prays an account. The account was ordered. She was to answer as to what her husband took as in a *devastavit*—the wife having *no notice of the revocation had paid legacies* charged on the lands by will. Ordered that she be *allowed those.* Cases in Chancery, 126, quoted 3 Bac. Ab., 50, n. 3. 1 Lomax on Ex., 190. Inaccurately stated in Williams on Ex., p. 406.

We do not percieve that there is any thing in the position that Le Baron was not compelable to pay at the time he did or that the statute allowed him to take a bond to refund. It would not have altered the legal bearing of the act, if payment had been made after the six months fixed by the statute, for the movement against the will took place upwards of a year after the grant. This time is for the convenience of the Executor to ascertain the debts of the testator and the amount of the assets so as to make a proper distribution. 1 Will. 855. Bonds seem to have been required, by the ancient practice in Chancery, of a legatee to refund if debts should appear, but it is now out of use. It was for the protection and benefit of the Administrator which he might waive as he might the payment before six months. 1 Story's Equity, 605.

We have not noticed the obvious distinction between cases commenced by citation before the ordinary to revoke a probate and those

Le Baron and Colquitt, Appellants, *vs.* Thos. W. Fauntleroy, et al., Appellees.

by appeal from his decision depending before a superior judicature for the very obvious reason that the payment was made before either appeal or citation.

We have by no means overlooked the cases in which a legatee as well as an executor have been held liable for payments illegally made to or received by them. Such are abundant in the books but they are cases of fraud in which the wrong doer whoever he may be is converted into a trustee. 4 T. R. 625. 1 Atk. 463. 1 Will. 609—370–1–2.

But there is no pretext for anything of the kind as to this payment either on the part of Mrs. Fauntleroy or Le Baron. Indeed the probate of the will was made on the affidavit of two of those who are now complainants in the bill, and another fact is to be remarked that there was no movement to disturb it until after the death of Mrs. Fauntleroy. But the liability is asserted in the bill on account of a devastavit charged to have been committed by Le Baron. Let us see whether this view of the subject is sustainable. "Devastavit is defined to be a mismanagement of the estate and effects of the deceased in squandering and mis-applying the assets contrary to the duty imposed on them for which executors and administrators shall be responsible out of their own pockets as far as they had or might have had assetts of the deceased." Bac. Ab., Ex. L., 1. Will. Ex., 1105. Toller, 424.

It is under this head Williams says "An executor is personally liable in Equity for all breaches of the ordinary trusts which in Courts of Equity are considered to arise from his office. And it may here be observed that where personal property is bequeathed to executors as trustees, the circumstance of taking probate of the will is in itself an acceptance of the particular trusts; therefore when the will contains express directions what the executor is to do, an executor who proves the will must do all which he is directed to do as executor &c. Will., 1104. Meeklow *vs.* Fuller, Jacob. 198.

Now it will hardly be contended that the administrator Le Baron could be held liable for not obeying the will by refusal to pay this money and again liable for paying it. We are then of opinion that in equity and justice as well as by the principles of law Le Baron should not be held liable for the payment of this legacy to these complainants.

The question yet remains as to the responsibility of Colquitt.— In reference to this we have no hesitancy in saying that if the pay

ment made to Mrs. Fauntleroy could not be supported under the will of her husband, that it should and ought to be so far as her distributive share as widow extended. If a mistake was committed by her in common with others interested in the estate, as well as by the tribunal whose office it was to adjudicate as to the legal effect of the paper set up as the testament of her husband, it certainly should not operate to produce a forfeiture of her interests as a distributee.

A salutary rule of a Court of Equity is to regard that as done which ought to have been done, and rather than declare a forfeiture of the widow's right, Equity would regard the payment as made to her originally for her distributive share and not as a legacy. This share does not reach the amount paid her by Le Baron and the enquiry is as to the liability of Colquitt to make the deficiency good. Whether such a liability may be made out against him is not the question before us. We have to decide whether the complainants have by their pleadings and evidence, made a case entitling them to relief in a Court of Equity. The allegation as to his liability is to this effect, "your orators further charge that said Le Baron has committed a devastavit upon the estate of his said intestate and wasted the same by paying a large portion thereof, to wit the sum of fifty thousand dollars to the aforesaid Walter Colquitt under pretence of a legacy having been left to the said Aphia in a pretended will of said deceased, which pretended will has long since been pronounced by a Court of competent jurisdiction, to be invalid &c., and that said Le Baron and Colquitt have combined and confederated together most unjustly to detain from your orators the said sum of fifty thousand dollars so illegally paid by said Le Baron to Colquitt, and they further shew that a portion of the said estate of said Fauntleroy so illegally paid to said Colquitt consists of bonds due by sundry persons, to wit, (here a blank) to the said estate and that many are now in suit by said Colquitt as assignee of said Le Baron and is thereby reducing the same to his possession." Here there is the simple allegation of devastavit against Le Baron for paying to Colquitt, though both are charged with combining to detain the $50,000. Now this charge of payment to Colquitt is expressly negatived by the agreed case shewing that on the 25th and 31st of May, 1840, this sum was paid to Mrs. Fauntleroy before her marriage. So that if a decree were rendered in favor of complainants against Colquitt it would be on grounds directly opposed to and falsifying the statements in their bill. It would be without allegation

and against proof.   We hold it to be very clear too that a mere charge of confederacy against a party is not the foundation for the juris-diction of a Court of Equity.   Story's Eq. pl., 25–27.

The whole case against Colquitt is clearly predicated on the idea of Le Baron's having committed a devastavit and that failing, the plaintiffs, case would seem to fail also as to him.   This case in dis-tinct and separate in its character from the distribution and may be better adjudicated by itself than in connexion with it.   The com-plainants had permission too of which they did not avail themselves to amend their bill, and cannot complain now of the dismission for want of it.

We are therefore of opinion that the bill should be dismissed as to Colquitt, without prejudice to the institution of another suit against him, if the parties think they can maintain one for the dif-ference between the amount of the legacy and the distributive share of Mrs. Colquitt.   In the mean time the present suit will proceed for distribution against Le Baron as to the residue of the estate cred-iting to him the sum paid on account of the legacy.   This view of the subject disposes of the exceptions to the masters report.

This same case was before the Court of Appeals of the late Ter-ritory at their January Term, 1845, and they holding different sen-timents and opinions as to the law of the case, reversed the decree of the Superior Court which had dismissed the suit as to Colquitt, and declaring that Le Baron had committed a *devastavit,* required them both to answer.   This decision, it is contended, is conclusive in this Court as to the rights of the parties having been made by a Court having full jurisdiction of the subject-matter.   This question was very fully considered by the Supreme Court of South Carolina in the case of Price's Executors *vs.* Nesbit, in which the Court after reviewing their own decisons and those of New York, held that the appeal from a final decree would, if pursued, open all prior de-crees whether of the Chancellor or Court of Appeals.    'So long as a decree operates,' it was said, 'merely as authority or as the rea-soning of the Court to prove the party's right, in whose favor it is pronounced it may be reviewed and reversed whenever it comes up properly before the Court of Appeals, in any of the subsequent stages of the case."   The opinion of Chief Justice Spencer in the Court of Errors of New York, was quoted with approbation, concurred in, as it was, by the whole Court.   " An appeal from a final decree opens for consideration all prior or interlocutory orders or decrees

Le Baron and Colquitt, Appellants, *vs.* Thos. W: Fauntleroy, et al., Appellees.

connected with the merits of the final decree." 17 John., 548.—
1 Hill, 547.

There could scarcely be higher authority than this in support of
a legal proposition, yet without holding it decisive, and reserving
the point for a more careful consideration, there is in our opinion
in the record and in the opinion and mandate of the Court sufficient
to shew that it should not conclude the rights of either Le Baron or
Colquitt.

There is no where in the record, or amongst the papers, any evi-
dence of an appeal prayed or taken either in the Court below or be-
fore the Clerk, nor does notice appear to have been given to the ad-
verse party of the appeal. The mandate of the Court itself states
that argument was heard of counsel for complainant, but that "no
counsel appeared on behalf of defendants." It is true the name of
an attorney for defendants is marked on the docket of this Court at
that time ; but at the most this is an equivocal act. In the Circuit
Court by statute the name of an attorney operates to prevent a judg-
ment by default in common law cases; but we are not aware that
of any law declaring its effect in a case of Chancery or in the Court
of Appeals. Does it amount to notice of an appeal by the other
side, and of the pending of the suit in the appellate Court. But
again it is insisted by appellants that, that Court had not the facts
before it, and therefore its decision could not be conclusive, and we
are referred to the opening of the opinion commencing as follows :
" It is difficult from the very imperfect record before us, to ascer-
tain either what the real questions in the cause are, or what decree
ought to be given upon the record, and were we not aided in some
measure by the *admissions of complainants' counsel on the argument*
and by some references to facts in the opinion of the Judge in the
Court below we should find it still more difficult. Disregard, how-
ever, the defects of the record as much as possible we shall endeav-
or to express our opinion on the main points or questions upon which
the *parties* desire a decision as we understand them, from the argu-
ment at bar as well as from the record."

In declaring the plea of Colquitt bad, which the Court did, on
grounds that neither the will nor probate were set out in the plea,
nor any averment that the $50,000 paid to Mrs. Fauntleroy were
the same $50,000 charged in the bill to have been paid to Colquitt,
and no answer connected with the plea as required by the statute,
they say, " it should be observed, however, that in the opinion of

Le Baron and Colquitt, Appellants, *vs.* Thos. W. Fauntleroy, et al., Appellees

the judge below, a state of facts is set forth which do not appear upon the record, and upon which it would seem that the decision of the Court below was predicated, and which might form *a good ground for the decision of the Court below ;* and we are not prepared to say, that if the facts set forth in the opinion of the judge were spread upon the record, and those were the only facts of the case, that the *decision might not be entirely correct."* They then direct him to answer fully, and that in so doing he compromits no rights—and if upon the coming in of his answer it clearly appears that he is not properly a party to the suit, the bill may be dismissed.

Even as to Le Baron, they say, " the Court below in its decision considered that the payment or delivery of the $50,000 of securities by the administrator to Mrs. Fauntleroy, was justified by the then existing probate of the pretended will, and in the opinion of that Court this conclusion is arrived at upon a state of facts set forth in the opinion, *which no where appear in the record,* and upon which that Court came to the conclusion, that although the will was annulled and declared void, and the probate of it revoked, yet that Le Baron is not bound to refund, &c.

Now, turning to the opinion of the Court below, we find these facts stated as the ground of its opinion. " It is declared to be the opinion of this Court, that Le Baron did not commit a *devastavit* in paying over the said legacy to the said Aphia, before a revocation of the probate, or notice thereof, and before suit to invalidate the said will." Perhaps with the facts now before us, the Court of Appeals might have come to the conclusion we have taken in common with the Judge of the Superior Court.

We are, therefore, of opinion, that, under these circumstances, the decree of the Court of Appeals should not be held to conclude the defendants in this case, as contended for by complainants. The decree of the Court below will be reversed and set aside, with directions to dismiss the bill as to Colquitt, and to allow the payment by the administrator of the legacy, and for further proceedings not inconsistent with this opinion.