The Chief Justice
delivered the opinion of the court;
The point first discussed in the briefs of the counsel relates to the regularity as a question of practice of the filing of the supplemental bill under which, and upon the testimony taken prior to filing it, the decree was pronounced. It is insisted by the counsel for appellant that the supplemental bill was irregularly and improperly filed.
There are, however, two valid reasons why this objection, though perhaps tenable in other respects, should not have weight here.; the first of which reasons is, that the solicitors for the appellants (defendants) consented in writing, as appears from the record, to the filing of the supplemental bill, being fully advised of its entire scope and purpose by the petition addressed to the court praying leave to file it; and the second is, that the defendant demurred to it, thus placing in issue before the court the matters of law and fact contained in the bill.
This supplemental bill is at most an amendment of the original bill containing grounds and prayers for relief additional to those of the original bill, and was filed eight years after the original, and five or six years after the despositions and the master’s report were filed and exceptions thereto taken. It cannot be said, therefore, that either party acted unadvisedly, and whatever objection to thus amending the bill might have been available to the defendant as a question of practice, it was waived by the consent and the demurrer.
The demurrer brings up the merits of the supplemental or amended bill.
The original bill was brought against the defendant Caro, who owned three-fourths of the schooner Powhatan and who acted as her master and manager, for an accounting to the complainant Hyer who owned one-fourth for his share of the earnings. The depositions taken under a decree of reference to a master covered not only the matter of the ship’s earning and expenses, but also the subject of the delay and want of diligence of the defendant “as master and part owner” in the management of the vessel, and the master’s report, purporting to the based upon the proofs so taken, contained an estimate of freights which might have been earned, deducting expenses which might have been incurred, if the ship had made more frequent trips, which she might have made, between Pensacola, her home port, and Hew Orleans, where she was engaged in the coasting trade, and allowing interest from time to time upon such possible earnings.
Exceptions having been filed 'to this report, the complainant, deeming’ that his original bill did not cover the entire scope of the proofs and of the report, and claiming that the proper allegations and prayer of the bill to cover these grounds had been omitted by mistake or inadvertence, petitioned fox leave to file the supplemental bill, setting forth the matter sought to be brought in, and the defendant consenting, the supplemental bill was filed.
The matter thus charged is “that from the 25th day of “September, A. D. 1854, up to the time of taking the said “account, the said respondent, Philip A. Caro, as master and “part owner of the said schooner Powhatan did not exercise “due diligence, but was guilty 'of such gross neglect and mis“management as to seriously damage your orator as one-fourth part owner of said schooner.” The prayer is “that your orator may have relief against the respondent “for such neglect and mismanagement, and that said respondent may be held liable for what the said vessel “might have earned for your orator by the exercise of due “diligence on the part of said respondent, of which, under iithe said decree of this court, an account has already been “stated and -filed in this court as will more fully appear by “reference to the said master’s report and account now on “file in this cause.”
The-defendant demurred to’ the supplemental bill, that it does not .set forth a case entitling the complainant to the relief prayed, and he says in his argument that the demurrer should be sustained, because (1) Caro, being part owner, was not responsible to the other part owner for any loss of profits by negligence; (2) because the continuance of such negligence was avoidable by Hyer and was not avoided, and (3) because Caro could not be charged with the contingent and speculative profits claimed.
The Chancellor overruled the demurrer, and the defendant not answering over, entered decree in favor of the complainant for the amount reported- by the master, with interest. The appeal is .from this decree.
The complainant’s right to recover against the defendant as part owner of the vessel for negligence or mismanagement of the property is the principal question here.
Part owners of ships, as to the conduct and the rights of co-owners, are deemed tenants in common of the property. One tenant in common of personal propetry cannot maintain an action against' the other tenants in common except for the wilful destruction of the property or for a sale of the entire property without his consent, so that he is deprived of the entire property and of all control over it; (9 Wend., 338; 9 Cow., 230; 15 Pick., 71;) but as to the earnings of the entire property he may maintain his suit in equity for his share of the net profits, such profits belonging to the several owners as a partnership fund distributable according to the several interests.
“Part owners,” says Story on Partnership, §449, “being tenants in common, one or more of them cannot maintain any action at the common law against the others ‘ for detaining, or even for forcibly carrying ‘away the ship; but they may for the destruction of the ship; and, by parity of reasoning, probably for a sale of the entirety of the ship without their consent. The right, also, to an account of all the earnings and profits of the ship by all the part owners is clear and indisputable.”
The ordinary remedy, he says, is by bill in equity in which all the owners should generally be made parties. If, however, there is an agreement between them by which one or more bind themselves to account to another for a separate share of the profits, 6uch agreement may entitle him to maintain his action at law against the contracting party for his share, or to a bill in equity for an account of profits.
“The Roman law,” lie says further, §451, “seems to have gone a step further than perhaps has yet been distinctly recognized at the common law, and that is, by giving a complete remedy in taking an account and making an allowance for all losses occasioned by the fraud or negligence of one part owner to the others in the management of the common property. Probably our courts of equity would, in many cases, act upon the same just and enlarged polic\: but it would not be easy to point out many instances of its actual' exercise and application in practice.”
Referring to the enumeration by Pothier of the duties and obligations of part owners to each other, among which are the duty of each to pay his share of the debts and charges contracted for the common concern, to account with *92 the other part owners for their shares of the common earnings and profits in his hands and to pay the debts due by him to them, as well as the damages sustained by them by his acts or negligences, Judge Story remarks: “But here again we must not assume, as a matter of course, that any one or more of the part owners is entitled, at the common law, to a compensation for losses sustained by the negligence or misconduct of the others in the management of the common property, where no special agency has been assumed, simply because the Roman law or the French law would seem, in like cases, to justify it; for the common law authorities have not as yet .recognized any guch general doctrine, and some of them may perhaps be thought to point to a different conclusion.” (Ib. §452.)
Part owners, or tenants in common cannot maintain suits against each other for the possession, or for their conduct in relation to the common property, because each part owner has the right of possession and may detain it as against the others, being liable only for actual profits, or for the wilful destruction, or the sale of* the entire property. This is the doctrine of the common law which prevails here by express legislative recognition. Where one part owner of chattels is dissatisfied with the conduct of the oilier owner who has the possession or control of the properly, as if he fails to employ it as to make a profit, we have been able to find no case where a court of law or equity has compelled the recusant possessor to make good the possible value of the use, or possible profits which might have been made if it had been profitably employed. The dissatisfied party is not without his remedy, for he may appeal to the courts for a partition or for a sale and distribution of the proceeds.
The same rule now prevails in this country in respect to ships. “What,” says Judge Story, “it may be asked; is to be done in case of any dissent by one or more of the part owners, not only as to the repairs, but as to the employment of the ship upon any projected voyage or adventure? Is the ship to remain idle and rot at the wharf? or, may the ship be equipped and employed so as to earn freight and subserve the general commercial policy of the country as well as the private interest of the other owners? The common law has here 'adopted and followed out the doctrines of the courts of Admiralty, founded upon the enlarged and equitable principles of maritime jurisprudence. It authorizes the majority in value or interest to employ the ship upon any probable design, and yet at the same time it takes care to secure the interest of the dissentient minority from being lost in any employment which he or they may disapprove.” The majority may employ the ship as they choose upon giving security to restore the ship, or in case of loss to pay for the shares of the minority, in which case the minority bears no portion of the expenses and are not entitled to share in the profits. And the court of Admiralty may compel the giving of pie security, and may compel the delivery of the ship to rpart owners who* choose to employ her by those who refuse to employ her, whether the majority or the minority so refuse. (Story on Part., §428; Abbott on Shipping, Pt. 1, Oh. 3 §3.) It is incumbent on the minority to have recourse to such proceedings, as the best means of protecting their interests. Por it has been decided that one part owner cannot recover damages against another, by an action at law, upon a charge of fraudulently and deceitfully sending the ship to foreign parts, where she was lost. (Sir T. Raymond, 15.) And it has also been decided in the Court of Chancery that one part owner cannot have redress in equity aginst another for the loss of a ship sent to sea without 'his assent. These decisions are consonant with the general rule of law that where one tenant in common does not destroy the common property, but only takes it out of the possession of another and carries it away, no action lies against him. Abbott on Shipping, Ib., and see Collyer on Part., 3 Am. Ed., §§1206-1208; Steamboat Orleans vs. Phoebus, 11 Peters, 175; Horn vs. Gilpin, Amber, 255.
Part owners are not, at common law, liable to each other for injury or loss to their common property by negligence. The reason given is that each co-tenant may protect himself and need not leave the properly in the uncontrolled possession of the other unless he choose to do so; and if he does so choose he must take the consequences. He has therefore no right of action if his co-tenant or part owner loses or injuries the property by his gross negligence, although he would have if the co-tenant had wilfully destroyed the property. 1 Parsons Mar. Law, Ch. 4, sec. 5; Anon., Skinner, 230; Strelly vs. Winson, 1 Vernon 197.
The case of Moody vs. Buck, (1 Sandf. S. C. R., 304,) was an action by one joint owner of a steamboat against another joint owner, who. controlled and managed her, for the destruction of the joint property by the negligence of the latter. And the question was whether one joint owner or tenant in common of personal property could maintain an action against his co-tenant for negligence in the use of it. “The cases in which there was a recovery in favor of the joint owner, were all cases where there was an actual destruction of the property by the co-tenant, or a constructive destruction by his wilful act. The clear result of the authorities is that one joint owner of a ship or chattel is not responsible to the co-owners for the carelesB use of it. The others, if not satisfied to leave it in his care, must look themselves to the protection of their own property.”
We must be excused for quoting to this extent from standard authors and decisions doctrines which are so familiar to the profession and which do not. relate directly to the precise question raised by the demurrer in this case. .But we think the bearing and result of the law we have cited point inevitably to the proper solution of it. The demand is that a majority part owner must account to the other part owner for the possible earnings in addition to the actual earnings of a vessel which is in the possession of the majority owner, and which he refuses negligently or otherwise to employ in such manner as to earn more money than she does earn, or which he “ties up to the wall” and refuses to employ in any profitable enterprise. The authorities say »he is not liable to the co-tenant for any conduct in the control and management of the ship, except for its wilful destruction or the actual Bale of the cotenantfs interest which is regarded as tantamount to a destruction.
If the part owner in possession is not so liable for neglecting to use or refusing to employ the vessel in any manner, it must be equally clear that he is not to be held liable for only employing her a portion of* the time and refusing to employ her at other times when her actual employment might be profitable to all her owners.
We find no case where a recovery in such case has been allowed. On the contrary, we find the rule well defined in such cases, that where a part owner of a ship is dissatisfied with the management of the co-owner, he may have his remedy in the Admiralty Court by taking measures to employ the ship in a more profitable manner. And where there is such a disagreement between owners, or such conduct on the part of part owners that the profitable employment of the property is impeded, we think it the established rule in this country, as in Prance and Scotland, that the Court of Admiralty will order a sale of the ship. Story on Part., secs. 438-439, notes and cases cited.
But the óounsel for the respondents here insists that the appellant, the three-fourths owner, having assumed the character of master as well as part owner of the vessel, has become the agent of each and all of the part owners; that this is a “special agency ” and that he became responsible *93 for his neglect like any other agent. It is doubtless the rule that upon “any contract of agency the agent is understood to contract for reasonable skill and ordinary diligence, and he is consequently liable for injuries to his employer occasioned by the want o| reasonable skill, and for ordinary negligence. By ordinary diligence we are to understand that degree of diligence which persons- of common prudence are accustoned to use about their own business and affairs. See Story, Agency, sec. 183; Jones on Bailment, 5, 7, 121.
We do not understand that the defendant in this case entered into any contract of agency with the complainant for the management of the vessel. He assumed the position of master by virtue of his majority ownership, without objection, and solely because he was three-fourths owner. A special contract with the minority might have made him a special agent, but this contract does not appear to have been made.
The original bill charges that complainant “became the purchaser of the said one-fourth part of said schooner in the month of November, 1853, and that ever since that time the said defendant has had the command and entire control of the said schooner, receiving and disbursing her earnings without the slightest supervision on the part of your orator.” The charge in the supplemental bill is that the said Philip A. Caro, “as master and part owner of the said schooner Powhatan, did not exercise due diligence, but was guilty of such gross neglect and mismanagement as to seriously damage your orator as one-fourth part owner.”
There is no other charge or intimation in the entire bill as to the character or capacity of the defendant. He is charged as “master and part owner” with negligence and mismanagement whereby the complainant was seriously damaged. The bill does not sever the relation of “part owner” from that of “master,” nor seek to charge any lia-.. bility as master separate from that of part owner. In the case of Moody vs. Buck, (before cited from 1 Sandf.,) the action was by one joint owner against another who “controlled and managed” the boat. This seems to have been the position of the part owner and master here. In Lowthorp vs. Smith, (1 Haywood, 255,) the court holds that if one of two joint owners of a schooner take possession of the whole, “no action lies for this, for one hath as much right to the possession as the other, but if he destroy it,” S¿c. The capacity of master, so far as it exists, is in virtue of the possession taken by him as part owner, and not by virtue of any contract whatever between the parties. The home of the schooner Powhatan was at Pensacola, where both parties also resided, as appears from the bill. The defendant Caro was in possession of the schooner from the time of Hyer’s purchase in 1853 until 'the commencement of the suit in 1859, and yet there is no pretense that any remonstrance was made by Hyer in regard to the management by Caro as part owner and master, but Caro was permitted to manage the property in accordance with his own judgment under the eye, so to speak, of the complainant, who received dividends of the earning3 from time to time, and yet during the five or six years he does not pretend that he complained of the negligence of which he must have been well aware during that period, if it existed, on the part of Caro as part owner or as master or both. If such negligence as resulted in damage to the complainant was attributable to Caro, in the meantime the complainant should have applied his remedy in the Court of Admiralty as we have already .seen. It is not found in this case that the complainant treated with Caro as his agent, in virtue of his assumed capacity as master, but according to the original and amended bill he claims only to have had dealings and accountings of the earnings with Caro by virtue of the part ownership and defendant’s control as a paTt owner.
IVe cannot conclude, therefore, that any such “special agency” existed on the part of the defendant toward the complainant as is contemplated by the law of agency, which holds an agent responsible for his want of diligence in the business of his principal.
The decree of the Circuit Court must be reversed and the cause remanded with direction to set aside the order and decree overruling the demurrer, and to enter judgment sustaining the demurrer, and dismissing the supplemental bill; that the exceptions to the master’s report (except the 10th exception, which was abandoned,) be sustained; that the master’s report be reformed and that such further proceedings be had in accordance with this opinion as may be agreeable to the practice of the-court, and that the respondents, the executors of Henry Hyer, pay the costs of this appeal.
The preceding opinion was rendered at the June Term, A. D. 1877, and thereupon at the same term the respondents fled the following petition for a rehearing:
The petition of the respondents respectfully represents unto your Honors that by the judgment and opinion of your Honors rendered in the above stated case at the present term the decree stands reversed upon grounds not insisted upon by the defendant in the court below, and surrendered by the appellant in this court.
That in the argument of the demurrer to the supplemental bill in the court below, the defendant insisted, as the principal ground of demurrer, that the omission of the original bill could not properly be supplied by a supplemental bill, and did not urge that the supplemental bill failed to show such special agency as would render defendant liable for negligence; that on the argument in this court the appellant’s counsel (Mr. Maxwell,) expressly admit•ted that as master defendant was responbile.
The other counsel for appellant, Mr. Blount, alluded to the point only incidentally, where he claims that his capacity as part owner merged within itself his capacity as master; a fancy that is at once dispelled by the suggestion that a greater cannot be merged in the less.
It is a well recognized fact that the master of a vessel, by 'reason of being the agent of all the owners, possesses while he is master powers not possessed by any part owner as such; for a master, by virtue of his agency, can bind by his acts all the part owners, while a part owner can ordinarily bind only himself and his interest. The master could bottomry and otherwise create liens which would bind the interests of all the part owners. The part owner as such could bind his own interest only; that appellees from such admission had good cause to believe that it was unnecessary to urge before the court and to produce authorities to sustain the point that as a master drawing pay from all the part owners defendant was a special agent; that had not their attention been thus diverted from what seems the paramount point in the case, the appellees could, as they believe, have produced to the court reasons and authorities that would have satisfied the court that defendant as master was such special agent as was liable for gross negligence as charged in the bill and admitted by demurrer; that appellees believe they can sustain the proposition that no words in the.English language so fully express the idea of a “special agency” as the words “master of vessel-;” an agency of so high a character that throughout the world parties dealing with a vessel may deal with the master without inquiry as to the extent of his agency; that appellees believe they can sustain the proposition that 'Caro could not have been master, entitled to the monthly wages paid by all the part owners which* *94 the record shows lie was to receive, without “a special contract with the minority owner;” that the capacity of a ‘ master drawing his compensation from all the owners cannot exist “in virtue of a possession taken by him as part owner,” but could only exist by virtue of some contract between the parties; they believe they can show a wide distinction between the “control and management” of a vessel by a part owner and the •“command and entire control” of a vessel by a paid agent of all the owners;-they believe they can show that defendant’s dual capacity, permits no defense except- a denial to the charge of gross neglect in the management of the subject matter of his agency; that a Court of Admiralty could have given complaint no remedy against his master, and no other redress against his co-part owner than security for his share of the vessel.
In consideration of the premises, your petitioners pray that your Honors will permit your petitioners to be fully heard upon the point which seems not to have been relied upon by the appellant and consequently was, to a great extent, overlooked by appellees, but which proves to be the pivotal point of the case.
At the same term an order opening the judgment and granting a rehearing was made, and at the January Term, A. D. 1879, the case was reargued by Mr. Bount for the appellant and Mr. Perry for respondents, and at the June Term, 1879, the following opinion of the court was rendered :
Hu. Justice Westcott
delivered the opinion of the court.
In the opinion delivered in this case upon the hearing/ the court- restricted itself principally to the consideration of the demurrer to the supplemental bill. Points are now made which render a consideration of the whole case, as presented at the hearing upon the pleadings and proofs, proper. These points relate to the doctrine of presumptions as applied to judicial action, as well as the rule' which, it is insisted, prevails in this court in reviewing conclusions of the Circuit Court upon matters of fact, where ^all of the testimony used at the hearing in the Circuit Court is not before this court.
The first point made in the argument upon the rehearing is, that the presumption is “that every tribunal by whom a cause is tried has done.what is right.” It is then insisted that it is apparent from the record that the ship’s books, which were in evidence in the Circuit Court, are not before this court; that all of the testimony is not brought before this court, and that .the rule alluded to requires us to give effect to the decree upon the presumption that the testimony omitted, ’with the testimony embraced in the record, justified the decree.
Several cases are cited to the effect that where a review of all the evidence is to be had, and a part of it only is in the record, the judgment must be affirmed, upon the presumption that the missing evidence would sustain it. These • cases are actions at law, and are not precedents to control us in disposing of this, a case in chancery.
Exidence taken during the progress of a trial at law is1 no part of a record, unless verified by the Judge in the form of a bill of exceptions, and no exception relating to or arising out of the evidence can be heard in the court of appeal, unless that evidence goes upon tire record through this or* some other method recognized and established by the practice prevailing in the court of original jurisdiction. Under our usual practice, it cannot be said in a case where there is no bill of exceptions that the evidence in a common law case is a part of the record, ‘and hence ’where there is no bill of exceptions there can be no certiorari upon suggestion in the diminution of the record to bring up. the evidence. In cases in chancery, however, no bill of exceptions, according to our practice, ‘ is known. In such cases the. evidence is a part of the record without this formality of verification by a bill of exceptions, and if any portion of the record‘is. omitted and the appellee wishes it supplied, he must do so* by a- motion for a certiorari to bring up. Where .the record in a. common law case before this court discloses no bill of exceptions, then this court must treat what is before it as an entire record, and such action as that record discloses is presumed to' be correct, so far as a consideration of the testimony is concerned. So, in the record of a chancery case, the evidence taken is presumed to be embraced in a record certified to be complete, because the testimony when taken and filed is ipso facto a part o‘f the record. If there is anything in these books which is material, constituting, so far as they were used in testimony, a part of the record in this case, the appellees should have asked for a certiorari, (Buie 7 of this court.) or in the event it was deemed necessary that the originals should be inspected,, a .special order for their production, under the rules, should .have been applied for.
In this connection we will remark that in cases involving matters of account and other cases where books are used before a master, it has not been the practice of this court any time' to affirm a decree in their absence, upon • the presumption* that they contained evidence in addition to that reported by the master from which the decree is to be supported and affirmed. The decree is made with reference to the master’s report. The evidence accompanying the report, duly verified, is as much a part of the record as the report itself, and- if an omission appears on the face of the record, or is made known by affidavit, or the court deems it necessary that what is omitted should be before it, a certiorari is the remedy. . In-this .case we cannot see any necessity for requiring such portion of these books as was used in evidence to be certified to this court; nor do we see any necessity for1 an order directing the production o’f the originals. Appellees do not even allege that their presence is material, to the questions involved in this case. Again, these questions were not raised in the argument of the rehearing, and are such as should have been raised before a hearing was had. The appellees cannot; as a matter of right after hearing, insist upon questions of a preliminary character not essentially affecting the merits ’ of the case so far as the record discloses. Thus disposing of these questions, we reach the case presented by the record. What is that case? Plaintiff owns one-fourth, defendant three-fourths, of a schooner engaged in the coasting trade. He (the plaintiff,) became the purchaser of this interest in the month of November, A. D. 1853. As to the employment of the vessel, he admits in his bill that "ever since that time defendant has had the command and entire control of the schooner, receiving and disbursing her earnings without the slightest supervision on his. part.” Plaintiff claimed that sums were due him on account of profits, and prayed for an account of the same. There was no prayer for damages for neglect.
Defendant in his answer admits the interest of plaintiff, and states that ever since the plaintiff acquired his interest, he, the defendant, has beeD commander and master of said vessel, and has received and disbursed the earnings of the vessel without the supervision and control of the plaintiff. He affirms that lie has accounted with plaintiff up to August, 1858 ;• that upon a proper accounting, charging plaintiff with his share of the cost and repairs and equipment, plaintiff will, be indebted to him. Defendant, as three fourths owner and master of the vessel, claims* the right and privilege of using and controlling the ship, admitting plaintiff’s right to security for his share and án account of the earnings. In reference to the employment of the *95 schooner, the defendant avers, "that the complainant, by his promises to this defendant shortly after they became owners of said vessel, caused him to abandon a regular and profitable trade, which he had secured for the same, and violating said pledges and promises, caused this defendant to seek precarious employment for the said vessel, entirely dependent upon his awn exertions and influence, and this defendant has been compelled,' for the purpo.se of procuring freights for the said vessel, to advance his own means and^money to the amount of several thousand dollars every trip of the same, without the contribution on the part of the complainant of any, even the smallest portion of the same, though complainant has always been ready and has always received he had contributed to the said freights and earnings.”
Upon the filing of replication, the chancellor made a decree, not only for an account of the actual earnings, but of such sums as the schooner "might have earned by the exercise of due diligence,” the defendant to be allowed wages for himself and such of the crew as belonged to him, so as to show the net balance due complainant, according to .the agreement of the parties or the custom of the port. The master was also directed to take testimony.
The master in his report charges the defendant. with sums "which might have been earned if proper diligence 'had been used,” being guided by the evidence-’as to the qualities and facilities of the vessel and the number of trips which she ought to have made during each year. There was evidence showing that more trips might have been made. There was no evidence of agreement between the parties. There was no evidence of any agreement between the parties to make any number of trips. The simple exercise of the powers of master is proved, nothing more. No claim having been made for damages for neglect in the bill, an allegation of gross negligence is made in a supplemental bill filed by consent. That allegation is that from "the 25th day of September, A. D. 1854, up to the .time of taking said account, the said respondent, Philip A. Caro, as master and paTt owner of the said schooner Powhatan, did not exercise due diligence, but was guilty of such gross neglect and mismanagement/ as to seriously damage your orator as one-fourth part owner of said schooner.” After demurrer to supplemental bill overruled, there was a hearing upon the bills original and suplemental, the answer and proofs and master’s report. There were exceptions to the charges in the master’s report wherein he gave damages for trips not made.
This is the case presented at the hearing.
The appeal here opens for consideration all prior interlocutory orders or decrees connected with the merits of the final decree. (2 Fla., 301-2; 4 Fla., 363; 9 Fla., 50.) A like rule prevails as to cases in equity instituted before the Code but heard and decided thereafter, which is this case. (15 Fla., 260; 14 Fla., 219.) Upon the hearing of the appeal in this case, this court has expressed an opinion that the demurrer to the supplemental bill should have been sustained, and the final decree, so far as it allowed damages for trips not made, was reversed.
We will review this record generally. The interlocutory decree in this case, was clearly an error, in so far as it directed the master to state an account of sums "which the vessel might have earned by the exercise of due diligence.” The case made by the bill was a case of alleged non-payment of plaintiff’s share of actual profits, and the prayer was for an account of the "sums of money earned by said schooner.” This decree was too broad and was error. Story’s Eq. Pldg., sec. 257; 7 Wheat., 522; 11 Pet., 229; 1 Bro. C. C., 94; Fla., 567.* Defendant’s proper course was to appeal from this interlocutory decree. In the event of such an appeal, this court, had it deemed the allegations sufficient to make a case, would have remanded the cause with leave to file a supplemental bill. (5 Fla., 567.) Such a bill, however, was filed (by consent), alleging gioss negligence in management, and under this bill the evidence of a want of diligence in the use of the vessel was made available at the hearing. This cured the error so far as the want of proper pleading is concerned. The proofs in this case, considered in connection with the supplemental bill as filed, enable this court to pass upon the merits of the final decree. The decree made in this case embraces two classes of profits; first, profits earned by *actual employment of the schooner; second, profits which might have been earned by more diligent employment.
Does this record make such a case against the defendant as renders him liable to the plaintiff for damages resulting to him by a- failure of the defendant to make as many voyages as he might have made by diligence and industry ?
Part owners of a ship are tenants in common of the ship, not partners; as to earnings, they are to be accounted for as between partners. There is some difference between the rules applicable tó tenants in common of chattels in general and to part-owners of a vessel, arising from the interest which' the public has in the employment of the vessel. One tenant in common of a chattel at common law- has no method of disposessing his co-tenant. All of the tenants are equally entitled to possession, and where one is in actual possession, he has a right to maintain it against the others, except in the case of severable chattels, as to which the rule in the United States permits a severance. Nor does the mere possession of it render him liable at common law to them for an injury done to it by him, short of the destruction of the properly, or something equivalent to a conversion. It is stated by Littleton in his Tenures, that " if two be possessed of chattels- personal in common by divers titles, as of a horse, an ox, a cow, &c., if the one take the whole to himself out of the possession of the other, the other hath no other remedie but to take this from him who hath done' to him the wrong, to occupie in common, &c;; “when he can see his time.” The law did not regulate the enjoyment or the use of the chattel, but left it to the owners to be arranged by agreement, or if they would not agree, it was permitted to go to destruction.
In reference to ships, however, this rule as to personal chattels did not prevail. ■ Being built " to plough the sea and not to lie by the walls,” there* are certain positive rules prescribed as to employment. Such rules are in the interest of the public, and to prevent idleness as the result of obstinacy. The employment of the ship is not like the employment of a horse or -other chattel, considered a matter of private concern alone, but the State enables even minority part-owners to keep it employed against the wish of other part-owners not so desiring, its employment being considered a matter of public concern and interest. It is not necessary for us here to state the methods by which this employment is secured. It is certain that, as a means to enforce employment, a part-owner in possession is not held responsible to another part-owner for a want of industry in the management or employment of the chattel. This is a subject not of common law or equity jurisdiction, but belongs in general to the courts of admiralty. (27 Conn., 361.). The difference in the principles applicable to the matter of the employment of this chattel does not result from a desire of the sovereign to give the part-owner of a ship any greater rights as to its employmént than exist as to any other chattel, or to give him rights of action resulting when exercised to his private benefit in the form of damages 'for non-user. The right is given as a means of public benefit and advantage, and that is given as the ground of difference by all the authorities upon the subject. " The *96 rights, remedies and liabilities of part-owners of ships •among one another are in general identical with those of other tenants in common.” In respect to torts, committed by some of the part-owners against the others, the law applicable to ordinary co-tenancy seems to control in all respects. One cannot maintain an action of replevin against the other to recover possession of any part of their common-property. Neither can have trespass or trover, nor indeed any action against the other under circumstances which would not justify the maintenance of such action between other tenants in common. (4 East, 110, 121; 7 Com. B., 229; Mac. on Shipping, 92; 1 Rose, 447; 2 Ves. & B., 216; 1 Vern., 297; 8 Gill, 92.) Therefore, one part-owner of a ship “.is not responsible to the co-owners for a careless use of it. The other owners, if not satisfied to leave it in his care, must look themselves to the protection of their own property. This rule has been applied even where a vessel took fire and was totally consumed by the carelessness and inattention of a part-owner in whose control it was. This rule of the common law is by Mr. PaT-sons considered as technical rather than just.” Parsons on Shipping, 104; Fleming on Shipping, 399; Freeman on Co-tenancy, §385; Moody vs. Buck, 1 Sand., 304.
In general, it may be said that “a tenant in common is not liable for negligence or misuse of the common property, nor for what he might have made by diligence.” (20 Barb., 448.) If in addition to the relation of tenant in common he is appointed bailiff, or by virtue of any contract or relation outside of and in addition to his relation of tenant in common, he assumes some other relation, which results in a legal duty to exercise diligence and ordinary industry and care in the use or employment of the common property, then, indeed, he may be held to the resulting legal obligation. This is all we understand Mr. Story to mean when he speaks with reference to a'special agency in this connection. These obligations follow, however, not from a simple employment or a non-employment or use of •the chattel, but exist by virtue of the obligation assumed and entered into outside of and beyond the relation of co-tenant. This distinction is recognized and acted upon in the case of Jarvis vs. Noyes, 45 Maine, 110. In that case the defendant was part-owner of the vessel. It appeared that while he “had no written authority from his co-owners to act as agent of the vessel, he had always acted as.such, had received her earnings, had' paid some of her bills, (the master having also paid a part of them,) and had paid out at different times several sums of her earnings to the • respective owners, and that the defendant had stated to the plaintiff that there was in his hands six hundred dollars of the earnings of the vessel belonging to the owners. Under this state of facts the court held that the defendant was liable as receiver only and not as bailiff, that is, for the amount he had actually received, and not the amount he might have received.” In this case, the case of Sargent vs. Parsons, 12 Mass., 148, is cited as authority for the view that an appointment is essential to a liability as bailiff, that is, a liability for care, industry and proper management in the use of the chattel.
In the case reported in 12 Mass., 148, Parker, C. J. says: “The action of account is maintainable only against a bailiff, and a bailiff can only be one who is appointed such.” This case, it is true, is between tenants in common of real estate, but it is applicable here in that it appears from it that where an obligation, resulting from a posession as bailiff is insisted upon, such a possession must bo shown. It is unnecessary for us to repeat here the citations made in the opinion of the court. An examination of them -Will show clearly that independent of some relation of’agency or contract, requiring industry in the employment' of the ship, one tenant in common in possession is not liable for neglect. A co-tenant of a chattel, or a part owner of a ship in possession and employing the chattel or ship, is not, by virtue of this possession or employment, liable in damages for a want of industry and skill in its management. Liability to account for earnings is the only result of such employment. A further liability for proper management, for the exercise of industry and diligence in the employment or use, can only result from a contract, express or implied, requiring the exercise of such diligence and industry; and it is necessary for a plaintiff not only to allege facts constituting such a relation, but when they are not admitted or are denied, to prove them. Has the plaintiff here alleged the existence of such a relation? In his original bill he states simply that the defendant was three-fourths owner of the schooner which was engaged in the coasting trade between New Orleans,. Pensacola, and shipping points on the Black Water river, and that the defendant had the command and entire control, receiving and disbursing .earnings, without the slightest supervision on the part of plaintiff. The allegation in the supplemental bill is “that Caro, as master and part owner of the schooner Powhatan, did not exercise due diligence,” &c. There is here no allegation of a contribution by plaintiff to the outfit, to the repairs, or to the expenses of the vessel; no allegation of a contract by which Caro was to have control and management, no allegation that he was to receive payment" for services in any capacity, and nothing from which it can possibly be contended that any contract in connection with Caro's possession is implied, except the statement that he was master and majority owner, modified by the admission that he had entire control in management as well as in disbursing the ship's earnings. Being majority owner in possession, Caro might have appointed a master, and if Caro's possession and exercise of control as master is to be referred to no contract with Hyer, and it should not be so referred in the absence of some allegation either to that effect, or from which it must -be implied, then there was no liability to Hyer other than such as results from possession and use by him, which is to account for the earnings.
The evidence in this record, so far as the relation of the parties is concerned, established that Caro was part owner and master, and nothing more. Defendant, in his answer, alleges that the complainant, by his promises shortly after they became owners of the vessel,* caused him to abandon a reglular and profitable trade which he hád secured; that, violating these pledges and promises, be caused this defendant to seek precarious employment for the said vessel, entirely dependent upon his own exertions and influence, and this defendant has been compelled, for the purpose of procuring freights for the said vessel, to advance his own means and money to the amount of several thousand dollars every trip of the same, without the contribution on the part of the complainant of any, even the smallest portion of the same, though complainant has ever been ready and has always received his portion of the earnings of the vessel equally, as- though he had contributed to the said freight and earnings.
As to the .matter of advances for freight, the testimony shows that some advances were made, but the master allows nothing, because, he Says, the evidence is indefinite as to the number of times freight was so bought, and there was no proof that the freights were bought with defendant’s private money. With a bill thus indefinite in its allegations as to the relations of the parties, and an answer thus definite and precise as to the nature of defendant’s possession, how’ can we conclude that Caro’B possession as part owner, or the exercise of the power of master is to be referred to some contract or agreement with. Hyer. The answer sets up expressly that there was an employment contemplated by both parties, but that the plaintiff failing *97 to fulfill his pledges, he, defendant, sought employment for the vessel entirely dependent upon his own exertions and influence, and that he was compelled to advance his own money to secure freights.
In the nature of things, there can be but three classes of possession of a chattel by a tenant in common. One in reference to title. The seizin of one tenant in common is considered the seizin- of all, and such presumed unity of possession is destroyed only by actual ouster, or proof of circumstances creating the presumption of ouster, or of facts showing clearly an adverse possession. Two, in reference to employment. First, a possession resulting from express agreement between the parties, or agreement implied from circumstances. Here an actual use, although by one, is still a common employment for- a common benefit, if such is the contract, express or implied. Second, a possession not referable to any contract between the parties, a simple possession and use by one by virtue of his right to employ while he has possession. In each class of possession, when viewed in reference to employment, the tenant not in possession has, in the absence of an agreement to the contrary, a right to an account of the earnings. Hence an accounting, being common to each class of possession, when viewed in reference to employment, cannot be said to be evidence of one class rather than the other.
In view of the case made by the pleadings, the possession and employment of the schooner by Caro here was a simple possession and use by virtue of his right to employ while in his possession. But it is said that he was master,' and that wages were allowed him in his account of disbursements. The bill makes no such case. The interlocutory decree directed such an allowance, and we presume it was made by the master. But, however this may be, the nature of the possession in this case, as we must hold it appears from the pleadings, is of such character that a sim-pie allowance of wages as a proper disbursement in settlement between the parties will not justify us in holding that the relation of master is referable to some contract implied from that fact, rather than to the sole possession and control as part owner.
It was insisted in argument that Caro’s relation to the ship was that of ship’s husband. We do not deem it necessary to point out the difference between thiB relation and that occupied by defendant, further than to say that possession and employment as ship’s husband belongs to the first class stated, which, in our judgment, is not the possession established here. On the contrary, the answer which would have been responsive to such an allegation, if made, sets up matters inconsistent with such relation, and the evidence does not establish such relation.
The judgment directed to be entered upon the first hearing will be entered as directed in the opinion of the court then delivered.